United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Fanny Quevedo and Carlos Quevedo, Plaintiffs, <br> v. <br> Iberia Lineas Aereas de España, Sociedad Anónima Operadora Co., Defendant. | Civil Action No. 17-21168-Civ-Scola |

### Order on Motions for Summary Judgment

This action arises from a severe turbulence event experienced onboard Flight 3252, operated by the Defendant Iberia Lineas Aereas de España, Sociedad Anónima Operadora ("Iberia") from Madrid, Spain to Milan, Italy on May 15, 2015. Plaintiff Fanny Quevedo ("Quevedo"), a passenger on that flight, asserts one count under the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Montreal Convention," S. Treaty Doc. No. 106-45) seeking recovery for personal injuries sustained during the flight.

Now before the Court are the parties' motions for summary judgment. (ECF Nos. 50, 52.). After reviewing the parties written submissions and exhibits, and the applicable law, the Court **grants in part** the Plaintiffs' motion (ECF No. 52), and **denies** Iberia's motion (ECF No. 50), as further described below.

### 1. Factual Background

The relevant undisputed facts, as established from the parties' submissions, (ECF Nos. 48, 55, 61, 66, 68, 71), and accompanying exhibits are summarized as follows:

**A. Iberia Flight 3252**

Quevedo was a passenger onboard Iberia Flight 3252 from Madrid, Spain to Milan, Italy on May 15, 2015. (ECF Nos. 55, 61 at ¶¶ 2, 3.) After boarding the flight, Quevedo fell asleep almost immediately. (ECF Nos. 48, 66 at ¶ 14 n.1.) Prior to takeoff, Iberia's flight crew issued the standard pre-departure safety announcement, directing the passengers to fasten their seatbelts. (*Id.* at ¶ 12.)

Mid-flight, air traffic control notified the captain of Flight 3252, Angel Cereceda Daza ("Captain Cereceda"), of adverse weather over the Milan-Malpensa Airport and instructed him to enter a holding pattern near Genoa, Italy. (*Id.* at ¶ 16.) Captain Cereceda then turned on the seatbelt sign, and later alerted his crew to the poor weather conditions with directions to secure the cabin. (*Id.* at ¶ 17.) After holding for a period of time, Captain Cereceda requested and received weather reports from Iberia for Genoa and Linate, the two alternate airports listed in the flight plan. (*Id.* at ¶¶ 8, 20.) Genoa was not accepting air traffic at that time, and the weather report indicated the presence of windshear at Linate. (*Id.* at ¶¶ 20, 21; ECF Nos. 66, 71 at ¶ 46.) Iberia's operations manual instructs that if "windshear conditions are suspected to exist in a given area, that area is to be avoided," and provides procedures when such conditions are forecasted on approach, including "delay[ing] landing or go[ing] to the alternate airport" and "[e]nsur[ing] conditions for a safe landing." (ECF No. 66-2 at 2.)

Ultimately, Flight 3252 was diverted to Linate, where air traffic control cleared it to begin descent. (ECF Nos. 48, 66 at ¶ 22.) At that point, Captain Cereceda notified the crew that "strong turbulence [was] expected during the approach," and instructed them to secure the cabin for landing. (ECF Nos. 66, 71 at ¶ 41; ECF No. 55-1 at 3.) In his deposition, Captain Cereceda testified that on a scale of "light, moderate and severe," he would place "strong" turbulence with "severe" turbulence. (ECF No. 64-4 at 134:18-21.) Iberia's policy is that pilots should avoid areas of known, severe turbulence. (ECF Nos. 66, 71 at ¶ 40.)

Per Captain Cereceda's instruction, the crew visually inspected the passengers' seatbelts in preparation for landing. (ECF Nos. 48, 66 at ¶ 25.) Diego Rubio Sanz ("Sanz"), a flight attendant on Flight 3252, inspected Quevedo's row. (ECF Nos. 55, 61 at ¶¶ 11.) Quevedo's jacket covered her lap, obstructing view of her seatbelt. (ECF Nos. 48, 66 at ¶ 30.) Nonetheless, Sanz looked under Quevedo's jacket from behind her seat and observed both ends of the seatbelt on her lap, indicating to him that it was fastened. (*Id.* at ¶ 31.) Sanz could not, however, observe the seatbelt buckle or confirm that it in fact was fastened. (ECF No. 55, 61 at ¶ 11.) The crewmembers then secured themselves for landing. (ECF Nos. 48, 66 at ¶ 32.)

Quevedo's seatbelt was not fastened. (*Id.* at ¶¶ 34, 35.) Sanz realized this during descent and unharnessed himself from his seat to attempt to secure Quevedo. (*Id.*) At that moment, severe turbulence struck Flight 3252. (ECF Nos. 55, 61 at ¶ 24.) Quevedo and Sanz were tossed around the cabin, from ceiling to floor, multiple times due to the turbulence, resulting in serious injuries to Quevedo. (ECF No. 48, 66 at ¶ 37.)

Iberia's operating procedures require flight attendants to "[v]erify that passengers remain seated with their seatbelts fastened" during descent. (ECF No. 62-7 at 14.) Iberia's corporate representative, Alicia Sanchez Ruiz ("Sanchez Ruiz"), the lead flight attendant on Flight 3252, testified that under normal circumstances this policy requires flight attendants to make certain that each passenger has his or her seatbelt fastened when securing the cabin. (ECF No. 62-4 at 21:2-7.) She also testified that under normal circumstances, when view of a sleeping passenger's seatbelt is obstructed, Iberia's policy is to make the seatbelt "visible," which might involve lifting a jacket, coat or blanket, or waking the passenger. (*Id.* at 20:19-21:1.) However, when time is of the essence, such as during turbulence events, Sanchez Ruiz testified that flight attendants may do a "fast check" and look to "see that the two ends of seatbelts are together." (*Id.* at 20:9-18.) During her seatbelt check of the business class cabin on Flight 3252, Sanchez Ruiz stated that she was not rushed or hurried and was able to insure that each passenger's seatbelt was fastened. (*Id.* at 53:3-10.)

Iberia conducted an internal investigation into the incident on Flight 3252. The resulting report found that Flight 3252 received thirty-minutes of reserve fuel and that the flight plan complied with Iberia procedures, which under the circumstances did not require a more distant alternate airport be listed. (ECF No. 55-4 at 27.) Self-critically, the incident report did note that "[b]oth the destination and the alternates had a negative forecast and were in an area where the significant map showed great instability; perhaps a more distant alternate, in addition to the extra fuel, would have given more options to the flight crew. There is no record of any coordination between the crew and flight dispatch in that regard." (*Id.*)

The Plaintiffs filed their complaint on March 29, 2017, asserting one count under the Convention for Unification of Certain Rules for International Carriage by Air (the "Montreal Convention") seeking recovery for injuries sustained on board Flight 3252. (ECF Nos. 1, 20.) Iberia answered and asserted four affirmative defenses, claiming that: (i) Quevedo did not sustain a "bodily injury" that was caused by an "accident," as is required to sustain a claim under Article 17 of the Montreal Convention (ECF No. 22 at ¶ 11); (ii) the Plaintiffs' injuries were not caused by the negligence or wrongful conduct of Iberia, such that Iberia should be wholly or partly exonerated from liability under Articles 20 and 21 of the Montreal Convention, (*id.* at ¶ 12); (iii) the Plaintiffs' injuries were caused or contributed to by Quevedo's own negligence or wrongful conduct, and Iberia should be wholly or partially exonerated from liability in proportion to Quevedo's fault under Article 20 of the Montreal Convention, (*id.* at ¶ 13); and (iv) the Plaintiffs' damages were caused by the

acts of a third-party and Iberia's liability should be wholly or partly reduced in proportion, (*id.* at ¶ 14.).

### B. The Motions

The parties cross-move for summary judgment. Iberia seeks judgment in its favor on the grounds: (i) that the Plaintiffs' injuries were not "caused" by an accident, as is required to establish a claim under Article 17 of the Montreal Convention; (ii) that Quevedo's negligence was the sole cause of the Plaintiffs' injuries, such that Iberia should be wholly exonerated under Article 20 of the Montreal Convention; and (iii) in the alternative, that the Plaintiffs' injuries were not caused by Iberia's negligence or wrongful conduct, thereby limiting Iberia's liability to 100,000 Special Drawing Rights ("SDR")[1] under Article 21 of the Montreal Convention. (Iberia's Mot. for Summary Judgment, ECF No. 50.)

For their part, the Plaintiffs request partial summary judgment in their favor, arguing: (i) that their injuries were caused by an accident incurred onboard an international flight, thereby establishing a claim under Article 17 of the Montreal Convention; (ii) that Iberia cannot show that its own negligence or wrongful conduct did not cause Plaintiffs' injuries, as it must to sustain its second affirmative defense under Article 21 of the Montreal Convention; and (iii) that Iberia cannot establish that a third-party is responsible for the Plaintiffs' injuries, as asserted in Iberia's fourth affirmative defense. (Plaintiffs' Partial Mot. for Summary J., ECF No. 52.)

## 2. Summary Judgment Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S.

---

[1] "An SDR is an artificial currency, published daily by the International Monetary Fund, which fluctuates based on the global currency market." *Eli Lilly & Co. v. Air Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1308 (11th Cir. 2010).

144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## 3. Discussion

### A. The Plaintiffs' Injuries Were Caused by an Accident Under the Montreal Convention

The parties cross-move for summary judgment on the Plaintiffs' claim under Article 17, section 1 of the Montreal Convention. The Plaintiffs argue there is no dispute of material fact that Quevedo's injuries were caused by an accident on board an international flight, and that their claim is established as a matter of law. (ECF No. 52 at 7-10.) At the same time, Iberia seeks summary judgment in its favor on the Plaintiffs' claim, arguing that Quevedo's injuries were not "caused" by an "accident," but rather by Quevedo's failure to fasten her seat belt. (ECF No. 50, 9-11.) Similarly, Iberia's first affirmative defense asserts that Iberia is not liable because Quevedo "did not sustain a 'bodily injury' that was caused by an 'accident.'" (ECF No. 22 at ¶ 11.)

Article 17, Section 1 of the Montreal Convention makes airlines "liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17. Thus, plaintiffs asserting claims under that provision must establish "three elements: (1) an accident; (2) that caused death or bodily injury; (3) that took place on the plane or in the course

of any of the operations of embarking or disembarking." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1172 (11th Cir. 2014).

An "accident" for the purposes of Article 17 is "an unexpected or unusual event or happening that is external to the passenger." *Id.* (quoting *El Al Isr. Airlines, Ltd. V. Tsui Yuan Tseng*, 525 U.S. 155, 165 n.9 (1999); *Air France v. Saks*, 470 U.S. 392, 405 (1985)).[2] That definition "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Id.* (quoting *Saks*, 470 U.S. at 405). In determining if an "unexpected or unusual" event occurred, courts "look at a purely factual description of the events that allegedly caused the aggravation injury suffered by the plaintiff." *Id.* (quoting *Krys v. Lufthansa German Airlines,* 119 F.3d 1515, 1521 (11th Cir. 1997)). Regarding causation, Article 17 "require[s] only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger," as "[a]ny injury is the product of a chain of causes." *Saks*, 470 U.S. at 406.

As to the first element, it is undisputed that the severe turbulence experienced by Flight 3252 was "unusual and unexpected." (*Compare* ECF Nos. 55, 61 at ¶ 23.) The Plaintiffs therefore have established that an "accident" occurred within the meaning of Article 17. *See Campbell*, 760 F.3d at 1172.

Next, there is no dispute that Quevedo was thrown from her seat during the turbulence event, hitting the floor and ceiling multiple times, resulting in injuries to her. (ECF Nos. 48, 66 at ¶¶ 36, 37.) Iberia, however, argues in its motion that Quevedo's failure to secure her seatbelt severed the chain of causation, meaning her injuries were not caused by the turbulence as a matter of law. (ECF No. 50, 9-11.) The Court rejects this argument. Causation under Article 17 "require[s] only that the passenger be able to prove that *some* link in the chain was an unusual or unexpected event external to the passenger." *Saks*, 470 U.S. at 406 (emphasis added). This is a low bar, and no reasonable juror could find that the severe, unusual and unexpected turbulence experienced by Flight 3252 was not a "link" in the causal chain leading to Quevedo's injuries. *Id.* Quevedo's failure to secure her seatbelt is certainly another link, but that is an issue of comparative negligence appropriately addressed through Iberia's affirmative defenses under Articles 20 of the Montreal Convention. (ECF No. 22 at ¶¶ 12, 13); *Moran v. Am. Airlines, Inc.*, No. 10-80878, 2011 WL 13116533, at *4 (S.D. Fla. Feb. 17, 2011) (Rosenbaum,

---

[2] "Courts interpreting the Montreal Convention may rely on authority concerning its predecessor, the Warsaw Convention, where provisions of both conventions are similar.'" *Jacob v. Korean Air Lines Co. Ltd.*, 606 F. App'x 478, 480 n.2 (11th Cir. 2015).

Mag. J.) (noting that Article 20 of the Montreal "Convention creates an 'exoneration' defense (a form of comparative negligence) applicable to all damages claims"). Thus, the Court finds as a matter of law that the Plaintiffs have established the second element of their Article 17 claim.

Finally, the parties agree that the turbulence event took place in-flight on Flight 3252 from Madrid, Spain to Milan, Italy, satisfying the last element of the Plaintiffs' Article 17 claim. (ECF Nos.48, 66 at ¶¶ 36, 37.)

Finding there is no dispute of material fact that an accident on board an international flight caused injury to Quevedo, the Court **grants** the Plaintiffs summary judgment on their Article 17 claim. For the same reason, the Court also **grants** summary judgment for the Plaintiffs on Iberia's first affirmative defense and **denies** Iberia's request for summary judgment on the Plaintiffs' claim.

## B. Reasonable Jurors Could Differ on Whether Quevedo's Injuries Were Caused, or Not, by Negligent or Wrongful Acts of Iberia

The parties also cross-move for summary judgment on Iberia's second affirmative defense under Article 21 of the Montreal Convention. That defense asserts that Iberia "is not liable to plaintiffs or, in the alternative, defendant's liability is limited because plaintiffs' damages are not due to the negligence of the carrier." (ECF No. 22 at ¶ 12.)

In relevant part, Article 21 provides that:

> 2. The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100,000 Special Drawing Rights if the carrier proves that:
>> a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or
>> b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

Montreal Convention, art. 21.

The parties' arguments center on three issues: (1) whether Sanz complied with Iberia's policies and procedures in conducting the final seatbelt inspection prior to descent; (2) whether Captain Cereceda complied with Iberia policy in proceeding to descend and land Flight 3252 through known turbulence at Linate; and (3) whether Iberia negligently or wrongfully failed to provide appropriate alternate airports in the flight plan for Flight 3252.

While Iberia carries the ultimate burden of proof at trial, *Zwak v. United States*, 848 F.2d 1179, 1185 (11th Cir. 1988), each party requests summary

judgment in its favor on this affirmative defense. Thus, to prevail at this stage, the Plaintiffs must establish that there is no dispute of material fact that Quevedo's injury was caused in some respect by the negligence or other wrongful act or omission of Iberia. On the other hand, for Iberia to prevail at summary judgment, it must establish that no reasonable juror could find that Quevedo's injuries were caused by a negligent or wrongful act or omission of Iberia. Viewing the evidence and all reasonable inference drawn therefrom in the light most favorable to the non-moving party, the Court finds that neither party has carried its respective burden.

First, a reasonable juror could find that the impending turbulence onboard Flight 3252 necessitated a "fast check," such that Sanz's observation of the seatbelt ends on Quevedo's lap complied with Iberia's policy. Yet, there is a view of the facts that questions whether Sanz's failure to observe the seatbelt buckle renders his visual inspection noncompliant with even the "fast check" standard. Further, in light of Sanchez Ruiz's check of the business cabin, a reasonable juror could also find that sufficient time existed to conduct a normal seatbelt check, thus requiring Sanz, under Iberia policy, to wake Quevedo or move her jacket, neither of which he did. Put differently, there are disputes of fact as to the applicable Iberia policy governing Sanz's seatbelt check and whether his conduct complied with such policy.

Next, a reasonable juror could find that Captain Cereceda knew of severe turbulence and windshear in and around at Linate, yet proceeded to land Flight 3252 at that airport anyway, in violation of Iberia policy and industry standard. But a reasonable juror could also find that Captain Cereceda appropriately exercised the discretion granted to him by Iberia policy in landing Flight 3252 through known, strong turbulence and windshear at Linate, where the destination and alternate airports were not accepting air traffic, the plane had only thirty-minutes of reserve fuel, and the air traffic control at Linate cleared the plane for descent and landing. Thus, there is a dispute of fact as to whether Captain Cereceda's decision to divert and land Flight 3252 at Linate was negligent or wrongful under the circumstances. *See Bannum,* 901 F.2d at 996 ("If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment.").

Finally, a reasonable juror could find that Iberia's flight plan complied with its internal policies and procedures, absolving Iberia of negligence or wrongfulness in its selection of alternate airports. At the same time, a reasonable juror might also find that Iberia knew of adverse weather at Milan, Genoa and Linate when creating the flight plan and was negligent or wrongful

under the circumstances in failing to list a more distant alternate airport with a cleaner forecast.

In sum, disputes of material fact preclude the Court from finding, as a matter of law, that negligence or wrongful conduct of Iberia either was, or was not, a cause of the Plaintiffs' injuries. As a result, the Court **denies** the parties' requests for summary judgment on Iberia's second affirmative defense.

Further, because a reasonable juror could find that negligent or wrongful conduct of Iberia caused the Plaintiffs' injuries, the Court cannot find as a matter of law that Quevedo was solely responsible for her injuries. Thus, the Court **denies** Iberia's separate request for summary judgment exonerating it from liability on its comparative negligence defense under Article 20.[3] (ECF No. 22 at ¶ 13.)

### C. The Plaintiffs are Not Entitled to Summary Judgment on the Fourth Affirmative Defense

The Plaintiffs also seek summary judgment on Iberia's fourth affirmative defense, which asserts that Iberia is not liable, in whole or in part, because "[t]he damages alleged in the Complaint were caused solely by the negligence and carelessness of some third person over whom defendant had neither control nor responsibility." (ECF No. 22 at ¶ 14.) The Plaintiffs argue that there is no admissible evidence that a third-party caused the Plaintiffs' injuries.

The Court rejects this argument. Quevedo confirmed at her deposition that on an earlier Iberia flight from Miami to Madrid on May 14, 2015, a tripod fell on her when another passenger opened an overhead compartment. (ECF No. 62-1 at 79:1-24 ("Q: So at the moment this person opened the overhead compartment, did the tripod fall out? A: That's the way. Q: That person witnessed your – the tripod hitting you? A: Yes.").) Further, the Amended Complaint alleges that "on the initial flight from Miami to Madrid, another passenger opened an overhead bin causing a nearby tripod to drop on Fanny, striking her hip. She was in pain from this throughout the overnight flight, and unable to sleep as a result." (ECF No. 20 at ¶ 7.) This is admissible evidence.

---

[3] Article 20 provides in relevant part that:

> If the carrier proves that the damage was caused or contributed to by the negligence or other wrongful act or omission of the person claiming compensation, or the person from whom he or she derives his or her rights, the carrier shall be wholly or partly exonerated from its liability to the claimant to the extent that such negligence or wrongful act or omission caused or contributed to the damage.

Montreal Convention, art. 20.

*See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d at 1151, 1177-78 ("The general rule is that a party is bound by the admissions in his pleadings." (quotations and alterations omitted)).

To the extent the Plaintiffs are pursuing damages resulting from the dropped tripod, there is admissible evidence from which a reasonable juror could find that such damages were caused by a third-party not under the control or responsibility of Iberia. Thus, the Plaintiffs' request for summary judgment on Iberia's fourth affirmative defense is **denied**.

### 4. Conclusion

In sum, the Court **grants in part** the Plaintiffs' motion for partial summary judgment. (ECF No. 52.) Summary judgment is **granted** for the Plaintiffs on their claim under Article 17 of the Montreal Convention and Iberia's first affirmative defense. The Court, however, **denies** the Plaintiffs' requests for summary judgment on Iberia's second and fourth affirmative defenses.

Iberia's motion for summary judgment (ECF No. 50) is **denied** in its entirety.

**Done and ordered** in chambers in Miami, Florida, on October 3, 2018.

Robert N. Scola, Jr.
United States District Judge