# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21168-CV-SCOLA/TORRES

FANNY QUEVEDO and
CARLOS QUEVEDO,

      Plaintiffs,

v.

IBERIA, LINEAS AEREAS DE
ESPANA S.A. OPERADORA
UNIPERSONAL,

      Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO PRECLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERTS

This matter is before the Court on a Motion to Preclude and/or Limit the Testimony of Plaintiffs' Experts, filed by Defendant IBERIA, LINEAS AEREAS DE ESPANA, S.A. OPERADORA UNIPERSONAL ("Defendant" or "Iberia") on August 14, 2018. [D.E. 79]. The Honorable Judge Robert N. Scola referred the Motion to the undersigned on September 12, 2018 [D.E. 101]. After due consideration of the Motion, in addition to the Response filed by Plaintiffs FANNY and CARLOS QUEVEDO ("Plaintiffs" or the "Quevedos"), [D.E. 91], we find that the Motion is **GRANTED in part** and **DENIED in part**.

### *I. FACTUAL BACKGROUND*

On May 15, 2015, Iberia Airlines Flight 3252 departed Madrid-Barajas Airport bound for Milan, Italy. During the flight, and on approach to Milan-Malpensa Airport,

the aircraft encountered turbulent weather, requiring the pilots to divert to another airfield. The plane eventually landed at Milan Linate Airport, but on approach the crew and its passengers were subjected to severe, continuous turbulence. The Amended Complaint alleges caused passenger Fanny Quevedo – who was not wearing a seat belt at the time the airplane encountered the turbulent air – was thrown to the aircraft's ceiling several times, causing serious injuries. The Quevedos claim that the airline and its pilots were negligent in causing the plane to travel through the severe weather in order to land at Linate, and that this negligence caused Plaintiffs' injuries.

Judge Scola ordered the parties to disclose expert witnesses by July 25, 2018. To that end, Plaintiffs submitted reports from Captain Carlos Miranda ("Miranda") and Captain Donald R. Lindberg ("Lindberg") on May 21, 2018. [D.E. 79, Exs. A and B]. In terms of qualifications, Captain Lindberg graduated from the Air Force Academy in 1983, served on active duty with the Air Force until January of 1991, and has flown aircraft as a flight engineer, first officer and captain for American Airlines ever since. [*See* Curriculum Vitae of D.R. Lindberg, D.E. 79-1]. He has been an FAA-rated pilot since 1977 and has experience operating single- and multi-engine commercial aircraft. *Id*. Captain Miranda also has considerable experience as an aircraft pilot, with over 2500 flying hours as a pilot-in-command for various rated aircraft. [D.E. 79-2]. He also trains other pilots and currently works as a captain and simulator instructor. *Id*.

Both Lindberg and Miranda prepared expert reports concerning the actions of Iberia and Flight 3252's crew. Both opine that the airline and the flight crew made

2

several mistakes on the day in question, and that those mistakes caused Plaintiffs to suffer injuries. Defendant now moves to strike or otherwise preclude both captains from testifying as experts. Specifically, Defendants argue that Captain Lindberg's opinions should be excluded because "his conclusions are not based upon a reliable methodology, his report contains legal conclusions, and he is not qualified to render expert opinion on flight attendant duties." [D.E. 79, p. 4]. Defendant also challenges the Miranda's opinions, claiming they are unreliable, not within the purview of Miranda's qualifications, and duplicative of Captain Lindberg's testimony. *Id.*, pp. 12-15.

After our review of the reports at issue, each expert's qualifications, and the record before us, we find that both Captain Lindberg and Captain Miranda are sufficiently qualified to deliver expert testimony under Rule 702. However, we also find certain points made by Defendant are meritorious, and so the Motion will be granted in part and denied in part.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The Rule provides that a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and

3

methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

A trial court determining the admissibility of expert testimony under Rule 702 must engage in a three-part inquiry, considering whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined discussed in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.[1] *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). "Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is to "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

The decision to admit or exclude expert testimony is within the trial court's discretion, and we enjoy "considerable leeway" when determining the admissibility of this testimony. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of

---

[1] The Eleventh Circuit refers to these elements as the "qualification," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260(11th Cir. 2004).

4

the evidence. *Allison v. McGahn Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *Frazier*, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.").

## III. ANALYSIS

### A. *Reliability*

Defendant, as an initial matter, argues that both Captain Miranda and Captain Lindberg's opinions should be struck in their entirety because each is unreliable.[2] [*See* D.E. 79, pp. 4, 12]. We disagree.

In determining whether an expert opinion is reliable, we must consider:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). This list of factors does not exhaust the different considerations that bear on the ultimate reliability of a proffered expert's opinion. *Id*. (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). "A federal court should consider any additional factors that may advance its Rule 702 analysis." *Id*. "Whether the *Daubert* opinion factors are even pertinent to assessing reliability in a given case will [depend] on the nature of the issue, the expert's particular expertise, and the subject of his

---

[2] Defendant does not challenge the qualifications of either expert with regard to the operational aspects of the flight in question.

5

testimony." *United States v. Brown*, 415 F.3d 1257, 1267-68 (11th Cir. 2005) ("The decision in *Kumho Tire* elaborated on the flexible nature of the inquiry.").

This is not a "hard science" case that allows for a neat application of the *Daubert* factors. The case instead involves two experts offering non-scientific, experience-based testimony. Under these circumstances, other factors bearing on the proffered experts' testimony are far more relevant and useful, *Frazier*, 387 F.3d at 1262, and a district court enjoys flexibility in utilizing those factors to conduct the reliability analysis. *Brown*, 387 F.3d at 1262.

As such, we must be satisfied that the witnesses have appropriately explained how their experience lead each to the conclusions reached, why that experience provides a sufficient basis for the opinions, and how that experience is reliably applied to the facts. *See Ciera Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 662 (S.D. Fla. 2012) (citing *Brown*, 415 F.3d at 1261). We are. Both Captain Lindberg and Captain Miranda possess learned, practical experience flying several forms of aircraft over the course of long careers, which includes extensive time flying, training, and operating the family of aircraft at issue. After reviewing the reports and depositions of both experts, we are satisfied that each captain is sufficiently qualified and reliable to offer opinions concerning the actions of Flight 3252's captain and crew, and that each properly explained how their experience supports their ultimate conclusions about the errors made on the flight in question.

Thus, on this record, we find that it would be improper to strike each Captain's report in their entirety as Defendant requests. Captain Lindberg and Captain

Miranda should be allowed to opine on the various decisions made by the flight's crew on the date in question and how those alleged errors may have led to Plaintiffs' injuries. Although not an exhaustive list, those opinions may include why or how the fuel conditions contributed to the decision to land the aircraft at Milan-Linate, the crew's notice about and appreciation of certain weather conditions, the crew's anticipation of the severity of the turbulence experienced in and around Milan, and – excepting the limitations discussed below – the decision to ultimately land at Linate, as opposed to other possible airports in the area that may have been more appropriate considering the conditions.

### B. *Testimony Concerning "Company Pressure" and "Culture"*

We do, however, find merit in Defendant's argument that Captain Lindberg and Captain Miranda offer inadmissible opinions on the aircrew's state of mind on the date in question. [D.E. 79, pp. 4, 13-14]. Both Captains offer the following: (1) "Captain Cereceda and First Officer Moreno appear implicitly to have complied with Company pressure to proceed to a divert airport for economic and operations performance criteria versus genuine, sound aviation judgment," [Lindberg Expert Report, D.E. 79-1, p. 5]; and (2) "[i]t appears that the culture within Iberia restricts questioning of the company's flight planning process even when certain poor conditions exist." [Miranda Expert Report, 79-2, p. 3]. These opinions ultimately seek to establish that the airline pressured the aircraft's pilots to land at Linate for economic and "cultural" reasons, and that the flight crew acceded to this pressure. Based on the record before us, we find each of these opinions should be excluded.

7

The *Daubert* inquiry does not require consideration of whether an expert's testimony is correct, but only whether the testimony is reliable and should be considered by the jury. *See Cheminova*, 400 F.3d 1286, 1292-93; *Quiet Tech.*, 326 F.3d at 1341. Although mindful of the fact that non-scientific, experience-based testimony may satisfy the "reliability" prong, "it remain[s] the burden of the proponent of the testimony to explain how that experience led to the conclusion [the expert] reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Frazier*, 387 F.3d at 1261, 1265.

As Plaintiffs point out artfully in their Response, Lindberg's ultimate conclusion is that the decision to divert to Linate was the wrong one. Lindberg supported this conclusion by discussing the adverse weather conditions present at Linate, the amount of fuel that remained at the tail-end of the flight, and the flight crew's decision to solicit a decision from the management of the company – rather than air traffic control – about the best diversion option. None of this runs afoul of the Federal Rules, and Captain Lindberg explains how in his experience, the flight crew committed error in determining Linate was the best option for landing the aircraft.

Likewise, Captain Miranda's report is rooted in his experience with various airline industry customs and practices. His deposition discusses certain issues he took with decisions made by the crew operating Flight 3252, including the captain's alleged "acceptance, without question, of a flight plan with insufficient fuel and

designated alternates," the "deferential tone and demeanor" of the plane's captains, and the failure to question the diversion options provided by the company when adverse weather made a landing at Malpensa infeasible. Based on his experience flying, Miranda would certainly be able to tell the jury that the conduct of the pilots, in addition to the direction provided by the company at the time the situation became serious, was unreasonable, inappropriate, and did not comport with industry standards and practices.

Where the opinions cross the line, however, is when Lindberg states definitively that the pilots acquiesced to company pressure to land at Linate, and when Miranda opines that Iberia's culture *requires* pilots to refrain from questioning decisions made by the company during emergency situations. Both, in our view, are inadmissible statements that should be excluded. *See In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D.W. Va. 2013) (expert opinions that address knowledge or the state of mind of another should be excluded); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony…[T]he question of intent is a classic jury question and not one for the experts."). Certainly, Lindberg and Miranda may opine that it is a rare occurrence for a pilot to contact company management when attempting to locate a diversion airfield during an emergency, or the effect a company "order" may have on an air crew under similar circumstances. But the ultimate conclusion that the pilots felt pressure – or indeed, that Iberia *demands* from their pilots unquestioning obedience after decisions are made – cannot be considered

9

anything more than rank speculation as to the crew's state of mind. We therefore find these opinions inadmissible. *See generally King v. Cessna Aircraft Co.*, 2010 WL 1980861, at *6 (S.D. Fla. May 18, 2010) ("[An expert] cannot so blatantly opine as to the pilot's state of mind that motivated those actions."); *Johnson v. AVCO Corp.*, 2010 WL 1329361, at *11 (E.D. Mo. Apr. 6, 2010) (striking expert opinion that pilot "felt pressure to land" at certain airport because "[w]e do not allow [expert] witnesses to tell juries…that something happened simply because it is possible.").

Along those same lines, it is not clear how either opinion may be helpful to a trier of fact. Expert testimony is helpful "if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. Testimony is not helpful "if it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.*; *see also In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1982) ("Our point is that the ultimate issue in such cases can too easily become *whatever an expert witness says it is*, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury.") (emphasis added). Both Lindberg and Miranda may express their skepticism, based on their own experiences in the air, about the flight crew's decision to ask the company about the best possible option for diversion. And Plaintiffs' experienced, competent counsel can (and almost certainly will) make the argument that Iberia made the erroneous decision to land at Linate not because it was the safest alternative, but because it made better financial sense – and in doing so, placed the lives of the passengers onboard Flight 3252 needlessly at risk. But what Plaintiffs

10

cannot do is ultimately advance those arguments by admitting each as "testimony" couched as "expert opinions." It is not helpful to the jury's assessment of liability for such testimony to be presented in this fashion, and even if it was, it would be improper state of mind evidence.

Accordingly, Defendant's motion to preclude such testimony is **GRANTED** as to this issue. The experts are barred from stating these conclusions before the jury.

### C. *Testimony Concerning the Cabin Crew's Roles and Duties*

Defendant next argues that Lindberg and Miranda should be precluded from offering opinions about the flight attendants' actions and the alleged failure to notice that Ms. Quevedo's seatbelt was unfastened at the time the aircraft encountered turbulence. We disagree.

Determining whether a witness is qualified to testify as an expert requires the trial court "to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Ciena Investments*, 280 F.R.D. at 661 (quotation omitted). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Id.* (citing *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562-53 (11th Cir. 2017)).

Captain Lindberg opines that the cabin crew failed to ensure that Ms. Quevedo's seatbelt was fastened during Flight 3252's approach to Linate Airport, a view shared by Captain Miranda in his rebuttal report. [*See* Lindberg Expert Report, D.E. 79-1, pp. 3-4; Miranda Rebuttal Report, D.E. 79-3, p. 11]. Defendant argues that

11

both captains are not qualified to render opinions about flight attendant duties or procedures, and should be precluded from testifying that the attendants acted in a negligent and wrongful manner on the flight in question. Plaintiffs, in opposition, contend that the captain directs the activities of the crew when it involves securing the cabin, and that flight attendants are required to ensure all passengers are safely secured on approach in accordance with the captain's orders. As such, the Quevedos argue that Lindberg and Miranda should be allowed to testify about their views with regard to the alleged negligence of the cabin crew in failing to ascertain whether Ms. Quevedo's seatbelt was properly buckled and secured during the approach into Milan.

We agree with the Plaintiffs. Captain Miranda and Lindberg are qualified to opine on the cabin attendants' duties and procedures, as each has considerable experience overseeing, managing, and directing cabin crews. We further agree with Captain Miranda that the roles of pilot and cabin attendant can be somewhat interwoven, and in general find that the pilot of an aircraft would be more than qualified to offer an opinion as to why and how a flight crew must comply with certain procedures before an airplane is considered secure for landing, or during times of severe turbulence. The ultimate overseer of passenger safety lies with the captain, and in that capacity both Lindberg and Miranda would be more than familiar with what constitutes "reasonable" actions taken by a cabin crew and whether or not Flight 3252's attendants in some way fell short of that mark.

We acknowledge that the issue is a close call. But we are ultimately persuaded to deny the Motion because the "qualification standard for expert testimony is 'not

stringent'" and "objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009); *see also Jones v. Otis Elevator Co.*, 861 F.2d 655, 662-663 (11th Cir. 1988) ("[W]eaknesses in the underpinnings of an expert's opinion go to its weight rather than its admissibility."). On cross-examination, Defendant's counsel may do their best to "ferret out" the opinions concerning the flight attendants' duties and point out "any weaknesses in [this] testimony on cross-examination," *id.* at 663, but, in our role as gatekeeper, it would be improper at this point to preclude that testimony in its entirety.

For these reasons, Defendant's Motion on this count is **DENIED**.

### D.    *Legal Conclusions*

Defendant's final challenge involves its contention that certain portions of Captain Lindberg's report contains legal conclusions that should be stricken. We agree.

While it is established that a qualified expert in a civil case may offer his opinion on an "ultimate issue" in a case, Fed. R. Evid. 704(a), experts "may not testify to the legal implications of conduct" or "tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). Rather, "the court must be the jury's only source of law," and expert testimony is not the proper place to discuss questions of law. *Id.* "[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v. Milton*, 555

13

F.2d 1198, 1203 (5th Cir. 1997). Thus, the district court must take "adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion." *United States v. Herring*, 955 F.2d 703, 709 (11th Cir. 1992).

At the tail end of his expert report, Lindberg writes, "Ms. Quevedo's injuries would not have occurred had Iberia and its employees acted as suggested…*rather than in the negligent or other wrongful manner described.*" [D.E. 79-1, p. 4] (emphasis added). This is a legal conclusion. The entire underlying claim revolves around this point of contention – whether the record demonstrates any evidence that Iberia was negligent on the flight in question. Lindberg may not couch such conclusions in the form of an expert opinion; his own view of the ultimate outcome that the jury should reach is irrelevant and invades the province of the trial court. *Mann v. Taser Int'l, Inc.*, 2007 WL 9712075, at *9 (N.D. Ga. 2007) (quoting *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983)); *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009).

Further, such a conclusion exceeds the scope of the experts' purview. They were not designated as causation experts, and a finding of negligence assumes that causation is established. The most the experts can attest to is that the Iberia crew breached their duty of care. That element of the negligence analysis does fall within the scope of the experts' knowledge and experience, and so to the extent the Plaintiffs intended to elicit anything more than that, the Motion is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, and in accordance with our findings in this Report, we hereby **find that** Defendant's Motion is **GRANTED in part** and **DENIED** in part.

**DONE AND ORDERED** in Chambers at Miami, Florida this 11th day of October, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge