United States District Court
for the
Southern District of Florida

| Fanny Quevedo and Carlos | ) | |
| Quevedo, Plaintiffs, | ) | |
| v. | ) | |
| Iberia Lineas Aereas de España, | ) | Civil Action No. 17-21168-Civ-Scola |
| Sociedad Anónima Operadora Co., | ) | |
| Defendant. | ) | |

**<u>Opinion Order Denying the Plaintiffs' Renewed Motion for Judgment as a Matter of Law, or Alternatively, Motion for New Trial</u>**

Before the Court is a renewed motion for judgment as a matter of law, or alternatively, motion for new trial filed the Plaintiffs, Fanny Quevedo ("Fanny") and Carlos Quevedo ("Carlos") (collectively, the "Plaintiffs"). (the "Motion," ECF No. 174.) Having considered the Motion, all opposing and supporting submissions, the entire record in this case, and the applicable law, the Court **denies** the Motion (**ECF No. 174**) as further described below.

1. **<u>Background</u>**

On May 15, 2015, Fanny was a passenger onboard Flight 3252, operated by the Defendant Iberia Lineas Aereas de España, Sociedad Anónima Operadora ("Iberia") from Madrid, Spain to Milan, Italy. Fanny fell asleep during the flight. Mid-flight, the plane diverted to an alternate airport due to poor weather that had developed at the destination airport. Flight control at the alternate airport cleared the plane for descent and flight attendants secured the cabin for landing, including by conducting seatbelt checks of the cabin. Fanny remained asleep. A jacket or blanket covered her lap, obstructing view of her seatbelt buckle. Flight attendants did not wake Fanny or move the jacket or blanket. Her seatbelt was unfastened.

Severe turbulence then struck the plane. This turbulence was so strong that the pilot lost control of the plane on multiple occasions. Fortunately, control was regained and the plane safely landed at the alternate airport. But Fanny had sustained serious injuries. Without her seatbelt harnessed, the turbulence threw her from her seat. As the plane dropped and shook, Fanny pinballed around the cabin, from ceiling to floor multiple times. She broke her back, her hip and her ankle, among other injuries.

In 2017, the Plaintiffs filed this action asserting one count under Article 17 of the Convention for the Unification of Certain Rules Relating to International

Carriage by Air (the "Montreal Convention," S. Treaty Doc. No. 106-45) seeking recovery for injuries sustained during that flight, including a loss of consortium claim by Carlos who is Fanny's husband. The Plaintiffs demanded a trial by jury. Iberia answered and asserted affirmative defenses under Articles 20 and 21 of Montreal Convention for comparative negligence and to limit liability.

In June 2018, the parties cross-moved for summary judgment. The Court granted the Plaintiffs' motion in part, finding the Plaintiffs had established their Article 17 claim as a matter of law. But the Court denied the parties' arguments directed at Iberia's affirmative defenses under Articles 20 and 21, identifying myriad factual disputes precluding summary judgment for either party on those defenses. For example, the Court observed that Fanny's "failure to secure her seatbelt" was a cause of her injuries that raised "an issue of comparative negligence appropriately addressed through Iberia's affirmative defense[] under Article[] 20 of the Montreal Convention." (ECF No. 112 at p. 6.) As for Iberia's liability, the Court summarized that:

> [A] reasonable juror could find that the impending turbulence onboard Flight 3252 necessitated a "fast check," such that Sanz's observation of the seatbelt ends on Quevedo's lap complied with Iberia's policy. Yet, there is a view of the facts that questions whether Sanz's failure to observe the seatbelt buckle renders his visual inspection noncompliant with even the "fast check" standard. Further, in light of Sanchez Ruiz's check of the business cabin, a reasonable juror could also find that sufficient time existed to conduct a normal seatbelt check, thus requiring Sanz, under Iberia policy, to wake Quevedo or move her jacket, neither of which he did. Put differently, there are disputes of fact as to the applicable Iberia policy governing Sanz's seatbelt check and whether his conduct complied with such policy.
>
> Next, a reasonable juror could find that Captain Cereceda knew of severe turbulence and windshear in and around at Linate, yet proceeded to land Flight 3252 at that airport anyway, in violation of Iberia policy and industry standard. But a reasonable juror could also find that Captain Cereceda appropriately exercised the discretion granted to him by Iberia policy in landing Flight 3252 through known, strong turbulence and windshear at Linate, where the destination and alternate airports were not accepting air traffic, the plane had only thirty-minutes of reserve fuel, and the air traffic control at Linate cleared the plane for descent and landing. Thus, there is a dispute of fact as to whether Captain Cereceda's decision to divert and land Flight 3252 at Linate was negligent or wrongful under the circumstances. *See Bannum,* 901 F.2d at 996 ("If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue

> of material fact, then the district court should not grant summary judgment.").
>
> Finally, a reasonable juror could find that Iberia's flight plan complied with its internal policies and procedures, absolving Iberia of negligence or wrongfulness in its selection of alternate airports. At the same time, a reasonable juror might also find that Iberia knew of adverse weather at Milan, Genoa and Linate when creating the flight plan and was negligent or wrongful under the circumstances in failing to list a more distant alternate airport with a cleaner forecast.

(*Id.* at pp. 8-9.) The case then proceeded to trial, principally on the issues of the parties' comparative negligence and the Plaintiffs' damages.

Over seven trial days, the parties presented their case to the jury. The jury heard live and recorded testimony from expert and fact witnesses, including Carlos, Fanny and other passengers, as well as from the pilot, purser and flight attendants on Flight 3252. The evidence adduced at trial was consistent with the Court's observations in the summary judgment order. At the close of Iberia's case, the Plaintiffs moved *ore tenus* for judgment as a matter of law on Iberia's comparative negligence defense, arguing that there was not a sufficient evidentiary basis for the jury to find that the Plaintiffs' injuries were caused by a negligent or wrongful act of Fanny. The Court denied the motion and gave the case to the jury.

On January 16, 2019, the jury returned its verdict. For damages, Fanny's past and future medical expenses totaled $175,000.00 and her pain and suffering amounted to $1,000,000.00. But on the comparative negligence defense, the jury found Iberia 1% liable with Fanny bearing 99% of the fault for her injuries. The jury also awarded Carlos nothing for his loss of consortium claim. On January 22, 2019, the Court entered an amended judgment in favor of Fanny and against Iberia in the amount of $11,750.00, representing 1% of her total damages.

After trial, the Plaintiffs timely renewed their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) and, alternatively, moved for a new trial under Fed. R. Civ. P. 59(a). (ECF No. 174.) Three arguments are raised in the Motion: (1) that "there was no legally sufficient evidentiary basis to support the jury's apportionment of 99 percent of the fault to" Fanny, such that the Plaintiffs are entitled to a directed verdict and a judgment in favor of Fanny for "the full amount of the damages that the jury found [she] had suffered, without reduction," (*id.* at pp. 12-14); (2) that the jury's apportionment of 99% of the fault to Fanny was "contrary to the manifest weight of the evidence and a new trial on liability and damages is warranted," (*id.* at pp. 15-18); and (3) that the "jury's finding that [Carlos] suffered no damages as a result of his wife's injuries" is

"unsupported by the evidence at trial, and a new trial is warranted as a result," (*id.* at pp. 19-20).

## 2. The Motion is Denied

The Plaintiffs move for a new trial under Rule 59(a), raising two arguments: (1) that the jury's apportionment of 99% of the fault in this case to Fanny is against the great weight of the evidence; and (2) that the jury's award of zero dollars to Carlos is against the great weight of the evidence. The Court disagrees on both points.

After a jury trial, a party may request a new trial under Rule 59(a) "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). One ground for a new trial is where "the district court judge believes the verdict rendered by the jury was contrary to the great weight of the evidence." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1320 n.3 (11th Cir. 1999). While the Court is "free to weigh the evidence" under this standard, a new trial is only permissible where the verdict is "contrary to 'the great, and not merely the greater weight of the evidence.'" *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982) (quoting *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1115 (5th Cir. 1980)). This is so because courts have a "duty to safeguard the role of the jury" as the finder of fact:

> Having had their day in court, the parties are entitled to a jury determination based on properly admitted evidence. The trial judge is empowered to invade the sacrosanct arena of the jury by granting a new trial only in the event of an extreme dearth of such credible evidence.

*Id.* at 1061.

Here, the jury's verdict was not contrary to the great weight of the evidence. First, with respect to the jury's finding that Fanny was negligent, the undisputed trial evidence was that Fanny did not secure her own seatbelt before the turbulence hit. The jury could have found on that basis alone that a "reasonably careful person" under "like circumstances" would have buckled their seatbelt while seated on an airplane—particularly before falling asleep, as Fanny claims to have done here. (ECF No. 154 at p. 5.)

As for the jury's apportionment of fault, Iberia presented evidence at trial that the only people who sustained serious injuries on Flight 3252 were the two people not wearing their seatbelts during the turbulence event: Fanny and Diego Rubio Sanz, the flight attendant who unharnessed himself before the turbulence to attempt to fasten Fanny's seatbelt for her. This provided a sufficient basis for the jury to conclude that if Fanny had taken minimal efforts to ensure her own safety by fastening her own seatbelt, she would not have sustained her injuries.

To be sure, a different verdict could have obtained on the trial record in this case. But that is not enough to "invade the sacrosanct arena of the jury by granting a new trial," where the record supports the jury's finding that Iberia's negligence minimally caused Fanny's injuries. *Rabun,* 678 F.2d at 1061; (*see* ECF No. 112 at pp. 7-9 ("Reasonable Jurors Could Differ on Whether Quevedo's Injuries Were Caused, or Not, by Negligent or Wrongful Acts of Iberia").) The apportionment of 99% of the fault to Fanny was not against the great weight of the evidence. *Id.*

With respect to the Plaintiffs' second argument for a new trial, the jury's finding that Carlos was not entitled to recover for his loss of consortium claim is not against the great weight of the evidence. Conflicting evidence was presented at trial on this claim, particularly with respect the changes, if any, to the Plaintiffs' marriage brought on by Fanny's accident. Carlos bore the burden to prove his damages by a preponderance of the evidence. The jury could have reasonably weighed the conflicting evidence on this issue, made a credibility determination and found that Carlos failed to meet this burden. *See Cowart v. Kendall United Methodist Church*, 476 So. 2d 289, 291 (Fla. 3d DCA 1985) ("there is nothing necessarily or legally 'inconsistent' between an award to the injured person and a finding of no damages in the derivative claim, which may be perfectly appropriate if the evidence on the point is insufficient or conflicting"). The jury's award of zero damages to Carlos on his loss of consortium claim was not against the great weight of the evidence.

The motion for a new trial under Rule 59(a) is therefore **denied**.[1]

---

[1] In a single footnote in the Motion, the Plaintiffs attempt to renew their motion for mistrial based on Iberia's brief presentation to the jury of a passenger manifest that was not produced to the Plaintiffs in discovery. (ECF No. 174 at p. 5 n.5; *see also* ECF No. 184 at p. 10 (requesting a new trial on this ground).) Assuming the Plaintiffs adequately raised this argument in a footnote in the Motion, they waived it by failing to cite authority to support their entitlement to such relief. *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

In any event, the Plaintiffs do not argue that the jury was improperly influenced by Iberia's brief introduction of this list at trial. Rather, they complain that Iberia's failure to produce the passenger manifest in discovery hampered the Plaintiffs' development of their case. During discovery, the Plaintiffs moved to compel the manifest. Magistrate Judge Torres held a hearing on Iberia's objection to producing same, during which time the Plaintiffs' informed the Court that they had "narrowed" their request to seek only "unredacted copies of documents that have already been produced containing the redacted names of injured passengers and passengers who filed claims with [Iberia] or who communicated verbally or in writing with [Iberia] about the flight." (ECF No. 34

Further, because the Court denies the motion for a new trial, it likewise **denies** the Plaintiffs' renewed Rule 50(b) motion for judgment as a matter of law on Iberia's comparative negligence defense. *See Dudley*, 116 F.3d at 1320 n.3 ("Because a less stringent standard applies to a motion for a new trial than to a motion for judgment as a matter of law, failure to meet the former standard is fatal to the latter." (quotation and citation omitted)).

3. **Conclusion**

In sum, the Motion (**ECF No. 174**) is **denied**. This case will remain closed. All pending motions, if any, are denied as moot.

**Done and ordered**, in Chambers, at Miami, Florida on August 13, 2019.

Robert N. Scola, Jr.
United States District Judge

---

at pp. 1-2; Tr. of Hr'g on Mot. to Compel, ECF No. 31 at 5:25-6:11 ("So we're not asking anymore for a full passenger list; we just want to know about those passengers that have been identified in Iberia's investigation or something along those lines.").) On that basis, Judge Torres overruled Iberia's objection and ordered the production of unredacted documents responsive to the Plaintiffs' "narrowed" request and not the complete passenger manifest. (ECF No. 34.) Because the Plaintiffs did not appeal that order within fourteen days of its entry (perhaps because Judge Torres granted them complete relief on their narrowed request), they have waived any challenge to it now. Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to."); *see also Smith v. Sch. Bd. of Orange Cty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) ("We have concluded that, where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this court.").